**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**GREENVILLE DIVISION**

| ROBERT A. LATHAM, Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br><br>    v.<br><br>MITCHELL J. STEIN, BILL MATTHEWS, PAMELA M. BUNES, BUDIMIR S. DRAKULIC, ROBERT C. SCHERNE, KEVIN F. PICKARD, LOWELL T. HARMISON, MARVIN H. FINK and SIGNALIFE, INC.,<br><br>              Defendants. | Case No. 6:08-cv-02995-RBH |
|---|---|
| DARRYL K. ROTH, Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br><br>    v.<br><br>MITCHELL J. STEIN, WILLIAM R. MATTHEWS, PAMELA M. BUNES, BUDIMIR S. DRAKULIC, ROBERT C. SCHERNE, KEVIN F. PICKARD, LOWELL T. HARMISON, MARVIN H. FINK and SIGNALIFE, INC.<br><br>              Defendants. | Case No. 08-cv-3183-RBH |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT BUDIMIR DRAKULIC'S MOTION TO DISMISS
<u>PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT</u>**

Lead Plaintiffs Bryan D. Harris, Mark Taylor and Greg Taylor, collectively the Taylor Signalife Investor Group ("Plaintiffs"), respectfully submit their memorandum of law in opposition to the motion to dismiss filed by Defendant Budimir Drakulic. As detailed herein, Plaintiffs' Consolidated Class Action Complaint (the "Complaint") adequately pleads claims for relief against Defendant Drakulic for securities fraud under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, 15 U.S.C. §78j(b); 17 C.F.R. §240.10b-5, and for control person liability under Section 20(a) of the Exchange Act. 15 U.S.C. §78t(a).

**SUMMARY OF ALLEGATIONS AS TO DEFENDANT DRAKULIC[1]**

Defendant Drakulic invented and developed the "revolutionary" heart monitoring technology that was basis for the Company's flagship product, the Fidelity 100, and all the subsequent products that were identified in the public filings underlying these claims. *See* ¶¶3, 20, 39.[2] Moreover, Defendant Drakulic was the co-founder of Signalife in 2002. *See* ¶¶3, 20. At all relevant times, Defendant Drakulic served as either Signalife's Chief Technology Officer, Chief Scientist or the head of research and development at the Company. In those various capacities, Defendant Drakulic was primarily responsible for the development of the Fidelity 100. ¶¶20, 39. As one of Signalife's founders and top executive officers with full access to material information about the Company and its products, Defendant Drakulic had actual, conscious knowledge of, and control and influence over, the development, manufacturing, and sale orders of the Fidelity 100. Significantly, as an officer and executive of the Company, Defendant Drakulic was aware of (or recklessly disregarded) the false and misleading statements made during the Class Period concerning the marketing, development, production and

---

[1] In an effort to avoid duplication, Plaintiffs will not repeat, but incorporate by reference, the summary of allegation sections and legal arguments contained in both their opposition to Defendants Signalife, Inc. ("Signalife" or the "Company"), Kevin F. Pickard, Robert C. Scherne and William R. Matthews' Motion to Dismiss (CA. No. 6:08-cv-2995 ("Latham Case"), Doc. #66; CA. No. 6:08-cv-3182 ("Roth Case"), Doc. #64), and their opposition to Defendants Pamela M. Bunes and Lowell T. Harmison's Motions to Dismiss. Latham Case, Doc. #65; Roth Case, Doc. #63.

[2] All ¶ and ¶¶ references are to Plaintiffs' Consolidated Class Action Complaint. Latham Case, Doc. #55.

1

commercial viability of the Fidelity 100 and its related products, as well as the purported sales and revenues (or lack thereof) from such products. Despite being a co-founder and an executive of the Company, as well as his involvement, intimate knowledge and control of the development and commercial viability of the Fidelity 100, Defendant Drakulic allowed the Company to issue a series of false and misleading statements concerning sale orders of the Fidelity 100 and revenues generated by those purported sales to be issued during the Class Period. ¶¶11, 12, 14, 66-68, 70, 72-73, 75-77, 79, 81-82. Defendant Drakulic concealed material facts that would have rendered these statements false and misleading. As a result, Defendants, including Drakulic, caused Signalife's stock price to be artificially inflated through such false statements. When the truth about the purported orders, sales and revenues were revealed at the end of the Class Period, Signalife's stock price plummeted and the Company was eventually delisted from the American Stock Exchange. ¶¶17, 85-87.

**ARGUMENT**

**A.     This Court's Prior Determination that Plaintiffs Have Adequately Pled Section 20(a), "Controlling Persons" Claims Should Also Apply to Defendant Drakulic**

Although Defendant Drakulic seeks dismissal of Plaintiffs' Section 20(a) claims, he makes no argument as to why he is not liable as a control person nor does he attempt to distinguish this Court's prior ruling establishing control person liability as to the other Individual Defendants. Indeed, in its September 4, 2009 Order (the "Order") denying in part and granting in part Defendants' Motions to Dismiss, this Court, after determining that the predicate violation of Section 10(b) had been meet, found that the Individual Defendants were controlling persons and that "Plaintiffs have sufficiently pled a claim against the Individual Defendants for a §20(a) violation."[3] *Id.* at 42. In the Order, the Court defined "Individual Defendants" as Defendants Pickard, Scherne, Matthews, Harmison and Bunes.[4] *Id.* at 39. Defendant Drakulic was not

---

[3]     In a further effort to avoid duplication, Plaintiffs incorporate by reference this Court's discussion on Section 20(a) liability in the Order. Roth Case, Doc. #74 at 38-42.

[4]     Despite having the Section 10(b) claims against them dismissed, Defendants Matthews, Scherne and Pickard failed to have Plaintiffs' Section 20(a) claims against them dismissed. Roth Case, Doc. #74 at 42.

included in the Court's definition because at the time he had not appeared in the case and was not a party to Defendants' Motions to Dismiss. In reaching its conclusion that the Individual Defendants were control persons and Plaintiffs' Section 20(a) claims were adequately pled, however, the Court cited the following allegations in the Complaint:

- Throughout the Class Period, the Individual Defendants were controlling persons of Recom/Signalife within the meaning of Section 20(a) of the Exchange Act and culpable participants in the fraud at Recom/Signalife . . . . " Doc # 1, ¶120.

- Each Individual Defendant exercised control over Recom/Signalife during the Class Period by virtue of, *intra alia*, their executive positions with the Company, the key roles they played in the management of Recom/Signalife and their direct involvement in the Company's operations, including its financial reporting and accounting functions. *Id*. at ¶121.

- [T]he Individual Defendants (other than Stein) were regularly presented to the market as the persons responsible for Recom/Signalife's day-to-day business and operations and the Company's overall strategic direction. The Individual Defendants (including Stein) presented quarterly and annual results, set guidance for future reporting periods and assured the market as the persons responsible for Recom/Signalife's day-to-day business and operations and the Company's overall strategic direction. At Recom/Signalife, the Individual Defendants (including Stein) had ultimate responsibility for, and control over, the Company's internal activities and public statements, and no one else at Recom/Signalife exercised similar degrees of responsibility and control. *Id*. at ¶122.

Roth Case, Doc. #74 at 41-42. Unlike the Court's definition of "Individual Defendants," the Complaint's definition of "Individual Defendants," as used in the above-cited paragraphs, included Defendant Drakulic. ¶41. Indeed, these allegations, plus the specific facts identified concerning Drakulic, who was the Company's founder, Chief Technology Officer, Chief Scientist and the head of research and development, as well as the fact that he was intimately involved in all the Company's products during the Class Period, and thereby had the power to control and influence the affairs and corporate policy that resulted in the primary liability, clearly establish liability under Section 20(a).

Given that this Court already found that the allegations in the above-cited paragraphs were sufficient to plead Section 20(a) claims against Individual Defendants Pickard, Scherne, Matthews, Harmison and Bunes, this Court should also find that these allegations are sufficient to plead a Section 20(a) claim against Defendant Drakulic. *See In re MicroStrategy, Inc. Sec. Litig.,* 115 F. Supp. 2d 620, 661 (E.D. Va. 2000) (citing *Brown v. Enstar Group, Inc*., 84 F.3d 393, 396 (11th Cir. 1996). Therefore, Defendant Drakulic's Motion to Dismiss the Section 20(a) claims pled against him should be denied.

B.     **Plaintiffs Have Stated a Claim Against Drakulic Under Section 10(b)**

In his three-page brief, Defendant Drakulic contends that he is not liable under Section 10(b), claiming (incorrectly) that Plaintiffs rely on group pleading to allege scienter. Moreover, Defendant Drakulic argues that because he was a non-speaker, no primary liability can be established.

As to Defendant Drakulic's first argument, as Plaintiffs had stated in the opposition to Defendants' Motions to Dismiss, Plaintiffs do not rely upon "group pleading" to establish liability. *See* Latham Case, Doc. #66 at 6-14, 19-21; Roth Case, Doc. #64 at 6-14, 19-21; Latham Case, Doc. #65 at 8-24; Roth Case, Doc. #63 at 8-24.

Specifically, Defendant Drakulic can be held primarily liable for failing to disclose the truth about the Company and its products. Given his involvement in the Company, as a co-founder and the Chief Technical Officer, as well as the fact that the Fidelity 100 and the related products were part of the Defendants' core business and the only products which they attempted to take to market, Defendant Drakulic can be held liable for failing to disclose facts concerning the viability of the Fidelity 100 as well as the lack of sales and revenues attributable to it and the other Signalife products. *See, e.g.*, *In re Ancor Commc'ns, Inc*., 22 F. Supp. 2d 999, 1005 (D. Minn. 1998) ("'[F]acts critical to a business's core operations ***or an important transaction*** generally are so apparent that their knowledge may be attributed to the company and its key officers.'") (emphasis in original) (quoting *Epstein v. Itron, Inc*., 993 F. Supp. 1314, 1326 (E.D.

4

Wash. 1998)), *abrogated on other grounds by In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999) (same); *In re Aetna Inc. Sec. Litig.*, 34 F. Supp. 2d 935, 953 (E.D. Pa. 1999) (finding knowledge imputed to key officials of problems with "core business"); *In re Vicuron Pharm., Inc. Sec. Litig.*, No. 04-2627, 2005 WL 2989674, at *7 (E.D. Penn. July 1, 2005) (the Company's "lead product in development, and its importance to the company supports at least a strong inference of recklessness of all the company's officers and directors named as defendants"); *In re Sears, Roebuck and Co. Sec. Litig.*, 291 F. Supp. 2d 722, 727 (N.D. Ill. 2003) (officers of a company can be assumed to know of facts "'critical to a business's core operations or to an important transaction that would affect a company's performance'") (citation omitted). As a matter of fact, these products were the only products that Defendants attempted to bring to market during the Class Period.

Also, contrary to Defendant Drakulic's contention, and as this Court noted in the Order, Plaintiff has pled specific facts demonstrating a "strong inference" that Defendant Drakulic acted with scienter. In the Order, this Court noted that:

> Counsel for Signalife conceded that a §10(b) claim against Defendant Drakulic may qualify under a core business theory to establish scienter. As such, in addition to the Court's finding of colorable §10(b) claims against Defendants Harmison, Bunes and therefore, Signalife, a claim against Drakulic may also remain.

Roth Case, Doc. #74 at 39 n. 22. Indeed, during the August 25, 2009 hearing on Defendants' Motions to Dismiss before this Court, Counsel for Signalife conceded that the core operations doctrine may establish scienter if there are "***very specific allegations that the executive's exposure to factual information that suggests they had actual access to the disputed information***." (August 25, 2009 TR. at 27:14-19) (emphasis added). Signalife's Counsel then stated that Plaintiffs may have established scienter against Defendant Drakulic under the core business doctrine because he "***invented the Fidelity 100***" – the Company's flagship product. *Id.* at 27:14-21 (emphasis added); *see also* Roth Case, Doc. #74 at 39 n. 22.

5

Not only did Defendant Drakulic invent the Fidelity 100 and its underlying technology, but he was also Signalife's founder, Chief Technology Officer, Chief Scientist and the head of research and development for the Fidelity 100 during the Class Period. These positions provided him with unparalleled access to information concerning the purported Fidelity 100 orders and whether the Company would be able to fulfill those orders and recognize revenue. Thus, as Counsel for Signalife previously conceded, Plaintiffs have alleged scienter on Defendant Drakulic's part with sufficient particularity.

As to Defendant Drakulic's second argument that he is not liable because he is a non-speaker, this ignores the plain language of Rule 10b-5, 17 C.F.R. §240.10b-5, and the Court's Order which explicitly acknowledges that a defendant may be liable for making false statements ***or omitting material facts*** in order to make the statements not misleading. *See* Roth Case, Doc. #74 at 19, 31 (emphasis added); s*ee also Longman v. Food Lion, Inc.*, 197 F.3d 675, 682 (4th Cir 1999); *Teachers' Ret. Sys. of LA v. Hunter*, 477 F.3d 162, 172 (4th Cir. 2007) (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)). Omissions are actionable under Section 10(b) and Rule 10b-5 if the party omitting the fact, or staying silent, had a duty to disclose that fact. *Chiarella v. U.S*., 445 U.S. 222, 230, 100 S. Ct. 1108, 63 L. Ed. 2d 348 (1980). "That the relationship between a corporate insider and the stockholders of his corporation gives rise to a disclosure obligation is not a novel twist of the law." *Id*. at 227. "[The Securities and Exchange] Commission recognized a relationship of trust and confidence between the shareholders of a corporation and those insiders who have obtained confidential information by reason of their position with that corporation. This relationship gives rise to a duty to disclose because of the 'necessity of preventing a corporate insider from . . . tak[ing] unfair advantage of the uninformed minority stockholders.'" *Id*. at 228-29 (citing *Speed v. Transamerica Corp*., 99 F. Supp. 808, 829 (D. Del. 1951)). Section 10(b) and Rule10b-5 impose "a duty to disclose material facts that are necessary to make disclosed statements, whether mandatory or volunteered, not misleading." *Hanon v. Dataproducts Corp*., 976 F.2d 497, 504 (9th Cir.1992); *see also In re Centerline Holdings Co. Sec. Litig*., 613 F. Supp. 2d 394, 398 (S.D.N.Y. 2009) ("A duty to disclose may

6

also arise 'whenever secret information renders prior public statements materially misleading, not merely when that information completely negates the public statements.'") (citation omitted); *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.,* 399 F.3d 651, 669 (6th Cir. 2005) (In the context of federal securities fraud laws, a duty to affirmatively disclose may arise when there is an inaccurate, incomplete or misleading prior disclosure.).

Here, Plaintiffs allege in the Complaint that Defendants, including Drakulic, "concealed true facts about Recom/Signalife, including that: . . . (b) The Individual Defendants had no intention of bringing any saleable product to market because Recom/Signalife was a stock manipulation scheme; (c) the Company had no means to manufacture or market any kind of saleable Fidelity 100 devices; (d) there were no orders for the Fidelity 100 or any of Recom/Signalife's heart monitoring products that would produce any revenue; (e) the Company was not filling orders by shipping Fidelity 100 devices or any other products to customers . . . ." ¶¶53, 84. As this Court found in the Order, these omissions were material. Roth Case, Doc. #74 at 26-27. Defendant Drakulic, as Signalife's founder, Chief Technology Officer, Chief Scientist and the head of research and development for the Fidelity 100, had a duty to disclose material information that rendered prior statements to the market about the Fidelity 100, and the purported orders and revenues, materially false and misleading. Defendant Drakulic's failure to do so makes him liable under Section 10(b). Therefore, Defendant Drakulic's Motion to Dismiss the Section 10(b) claims pled against him should also be denied.

**CONCLUSION**

As discussed herein, Plaintiffs have pled proper claims under Sections 10(b) and 20(a) of the Exchange Act against Defendant Drakulic. Accordingly, Defendant Drakulic's motion to dismiss should be denied in its entirety.

Dated: October 23, 2009                                  Respectfully submitted,

/s/ Terry E. Richardson, Jr.
Terry E. Richardson, Jr. (#3457)
RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC
1730 Jackson Street
Barnwell, SC 29812
Tel: (803) 341-7850
Fax: (803) 541-9625
trichardson@rpwb.com

Liaison Counsel for Plaintiffs

Beth Kaswan
Joseph P. Guglielmo
SCOTT+SCOTT LLP
29 West 57th Street, 14th Floor
New York, NY 10019
Tele: (212) 223-6444
Fax: (212) 223-6334
bkaswan@scott-scott.com
jguglielmo@scott-scott.com

David R. Scott
SCOTT+SCOTT LLP
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415
Tel: (860) 537-5537
Fax: (860) 537-4432
drscott@scott-scott.com

Arthur L. Shingler III
Luis E. Lorenzana
SCOTT+SCOTT LLP
600 B Street, Suite 1500
San Diego, California 92101
Tel.: (619) 233-4565
Fax: (619) 233-0508
ashingler@scott-scott.com
llorenzana@scott-scott.com

Lead Counsel for Plaintiffs

9

CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2009, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 23, 2009.

/s/ Terry E. Richardson, Jr.
Terry E. Richardson, Jr. (#3457)
RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC
1730 Jackson Street
Barnwell, SC 29812
Tel: (803) 341-7850
Fax: (803) 541-9625
trichardson@rpwb.com