IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| ROBERT A. LATHAM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MITCHELL J. STEIN, BILL MATTHEWS, PAMELA M. BUNES, BUDIMIR S. DRAKULIC, ROBERT C. SCHERNE, KEVIN F. PICKARD, LOWELL T. HARMISON, MARVIN H. FINK and SIGNALIFE, INC.<br><br>Defendants. | : : : : : : : : : : : : : : : | Case No. 08-cv-2995-RBH |

| | | |
|---|---|---|
| DARRYL K. ROTH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MITCHELL J. STEIN, WILLIAM R. MATTHEWS, PAMELA M. BUNES, BUDIMIR S. DRAKULIC, ROBERT C. SCHERNE, KEVIN F. PICKARD, LOWELL T. HARMISON, MARVIN H. FINK and SIGNALIFE, INC.<br><br>Defendants. | : : : : : : : : : : : : : : : | Case No. 08-cv-3183-RBH |

**DEFENDANT BUDIMIR DRAKULIC'S**
**REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

## I.     INTRODUCTION

Plaintiffs' case against Dr. Budimir Drakulic relies entirely on a misapprehension of his title as Chief Technology Officer of Signalife, Inc.  An examination of Dr. Drakulic's duties shows that he was ***not*** at all involved in the Company's accounting or in making public statements: his job duties began and ended with designing heart-monitoring devices.  Neither his title nor any other non-conclusory allegation in the Complaint suggests that Dr. Drakulic played any role in the Company's accounting or in drafting, making or disseminating the public disclosures in question.  In short, plaintiffs seek to establish liability against a non-speaking defendant who is ***not*** alleged to have sold any stock or received any incentive-based bonuses, and who in fact was merely a scientist employed by the Company.  There is no liability under either Section 10(b) or Section 20(a) of the Securities Exchange Act of 1934 for those that are not at all involved in making public disclosures, and plaintiffs' claims against Dr. Drakulic should be dismissed accordingly.

## II.     DR. DRAKULIC IS A NON-SPEAKER AND THEREFORE IS NOT LIABLE

Plaintiffs attempt to allege that Dr. Drakulic's work as a technology designer is sufficient to link him to Signalife's allegedly misleading statements, but that is not the law.  The most fundamental element of a Section 10(b) claim is that the named defendant must have ***personally*** made a false or misleading statement.  17 C.F.R. § 240.10b-5.  Under the Private Securities Litigation Reform Act ("PSLRA"), plaintiffs must plead this element of a Section 10(b) claim with heightened particularity, explaining exactly which defendant made precisely what false statement or omission of material fact. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 127 S.Ct. 2499, 2504 (2007) (holding that the PSLRA "requires plaintiffs to state with particularity…the facts constituting the alleged violation"). As a result, there is no liability under Section 10(b) for non-speakers:

> For liability to attach under Rule 10b-5(b), a defendant must make a public misrepresentation… [and w]hile the alleged violator need not 'directly communicate misrepresentations to plaintiffs for primary liability to attach,' for a 'misrepresentation to be actionable as a primary violation, there must be a showing that [the defendant] knew or should have known that his representation would be communicated to investors ...'[1]

Plaintiffs have not alleged that Dr. Drakulic was a speaker—he did not make any of the challenged statements.  (Mot. at 2.)  Moreover, plaintiffs have not alleged that Dr. Drakulic was even *aware* of the allegedly misleading disclosures before they were released to the public, much less involved in or able to exercise control over the disclosure-making process.  *Id.* Dr. Drakulic's duties, as plaintiffs describe them, did *not* involve sales, marketing, manufacturing, communicating with investors or drafting SEC disclosures—his job was limited to designing the technology.  (CAC ¶ 39.)  Plaintiffs' repetition of Dr. Drakulic's title like a mantra and conclusory assertions of knowledge are not enough to support a claim.  (Opp. at 3, 4, 6, 7.)  Plaintiffs have failed to show any connection between Dr. Drakulic and the making of Signalife's public disclosures, and without this connection they have failed to state the most basic and essential element of a Section 10(b) claim.  *In re Royal Ahold N.V. Sec. & ERISA Litig.,* 351 F. Supp 2d 334, 370-71 (D. Md. 2004).

Lacking any specific connection between Dr. Drakulic and the Company's public disclosures, plaintiffs fall back on the argument that all defendants are equally liable for the "group-published information, the result of collective actions of the Individual Defendants." (CAC ¶ 41.)  This is nothing more than impermissible "group pleading," which the Fourth Circuit has rejected because the PSLRA requires plaintiffs to "allege facts…[against] *each*

---

[1] *In re Royal Ahold N.V. Sec. & ERISA Litig.,* 351 F. Supp 2d 334, 370-71 (D. Md. 2004) (citing *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 369 (4th Cir.2004)), *aff'd, Pub. Employees' Ret. Assn. of Colo. v. Deliotte & Touche, LLP,* 551 F.3d 305, 313 (4th Cir. 2009).

defendant" and prohibits plaintiffs from relying on collective generalities to state a claim. *Teachers' Ret. Sys. of La. v. Hunter,* 477 F.3d 162, 184 (4th Cir. 2007).

Plaintiffs' allegations at most describe Dr. Drakulic as a research-and-development department manager, and there is no liability under Section 10(b) for those that are only indirectly involved in an alleged misrepresentation or omission.[2] *Pub. Emps.' Ret. Sys. of Colo. v. Deloitte & Touche LLP,* 551 F.3d 305, 313 (4th Cir. 2009) "parties who merely assist another in violating § 10(b) are not liable under § 10(b)")(citing *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.,* 128 S.Ct. 761 (2008)); *In re aaiPharma, Inc. Sec. Litig.,* 521 F. Supp. 2d 507, 510 (E.D.N.C. 2007) ("any defendant who does not make or affirmatively cause to be made a fraudulent misstatement or omission, or who does not directly engage in manipulative securities practices, is at most guilty of aiding and abetting and cannot be held liable under 10(b) or any subpart of Rule 10b-5.")(quoting *In re Charter Commc'n, Inc. Sec. Litig.*, 443 F.3d 987, 992 (8th Cir. 2006)).  Although many aiding-and-abetting cases discuss the actions of third-party accountants and auditors, the aiding-and-abetting exemption from Section 10(b) liability applies equally to insiders, such as members of company management who are uninvolved in drafting disclosures or in accounting. *See, e.g.,  In re Tyson Foods, Inc.,* 155 Fed. Appx. 53, 56-7 (3d Cir. 2005) (affirming summary judgment for Senior Chairman Don Tyson and CEO John Tyson because they did not play a role in preparing or drafting the alleged misrepresentations contained in the press release).

---

[2] Ignoring this fact, plaintiffs try to ascribe to Dr. Drakulic some sort of independent duty to disclose or correct despite his lack of involvement in Signalife's accounting and public disclosures, basing their argument on case law regarding insider trading. (Opp. at 6 (citing *Chiarella v. U.S.,* 445 U.S. 222 (1980).)  While it is true that an insider must disclose material non-public information before trading company stock, plaintiffs have ***not*** alleged that Dr. Drakulic sold any shares of Signalife stock, so insider trading duties are irrelevant to the Court's analysis.

Indeed, as to Dr. Drakulic, the facts in this case closely resemble those in *Dutton v. D&K Healthcare Resources*, No. 4:04-cv-147SNL, 2006 WL 1778876, at \*9 (E.D. Mo. 2006),[3] in which the head of a sales department was alleged to have engaged in channel-stuffing to inflate revenue, but was not alleged to have had a part in the Company's accounting or disclosure drafting. Notably, the sales department head in *Dutton* was alleged to have a much closer connection to the alleged fraud than Dr. Drakulic has here: while the *Dutton* defendant was accused of actively creating false sales, Dr. Drakulic is simply alleged to have designed a product that was late coming to market. Based on the significantly more egregious allegations in *Dutton*, the court in that case held:

> At worst, these allegations may marginally depict a middle manager aiding and abetting senior management with the alleged channel-stuffing scheme to artificially create growth in revenue and indirectly cause the alleged misrepresentations about said revenue. However, liability does not attach under §10(b) and/or Rule 10b-5 for aiding and abetting.

*Id.* Dr. Drakulic was not involved in Signalife's public disclosures or accounting, and therefore he cannot be held liable under Section 10(b). *Deloitte & Touche LLP,* 551 F.3d at 313.

## III.    THE CORE BUSINESS DOCTRINE DOES NOT APPLY TO DR. DRAKULIC

Plaintiffs in their Opposition write extensively regarding the "core operations doctrine," citing defendants' attorney Paul Bessette's statements at oral argument as authority. (Opp. at 5.) Read in full context, however, Mr. Bessette's statements regarding Dr. Drakulic were not made to suggest that the core operations doctrine applied to Dr. Drakulic, but instead to point out that plaintiffs had failed to plead ***any*** specific facts showing exactly when or how the high-level executives at Signalife actually involved in making the public disclosures were exposed to the

---

[3] Copies of all cited, unpublished cases or cases available only on an electronic reporter are attached hereto as Exhibit A

detailed, specific information known by Dr. Drakulic and his technical design team about the precise status of product development. (Aug. 25, 2009 Tr. at 27:14-28:21.)    Indeed, Mr. Bessette's point was that plaintiffs have not shown any communication or overlap at Signalife between those in the trenches of designing the technology and those making the public statements on the Company's behalf that would have caused either to know that the Company's public statements were false or misleading. (Aug. 25, 2009 Tr. at 27:14-28:21.)  Without such specific facts, the core operations doctrine does not apply.  *See, e.g., Johnson v. Pozen,* No. 1:07CV599, No. 1:07cv599, 2009 WL 426235, at *a6-20 (M.D.N.C. Feb. 19, 2009) (core operations doctrine does not allow for an inference of scienter when plaintiffs pled no facts to show that high-level executives making public disclosures had reason to know a drug in development was unlikely to be approved by the FDA); *Zucco Partners, LLC v. Digimarc Corp*., 552 F.3d 981, 1000-1001 (9th Cir. 2009) (no scienter under core operations doctrine when stage of development  of company's primary software product was not visible to executives making the company's public disclosures because they were not intimately connected with the development process).

Furthermore, the core operations doctrine applies only to the company's highest key officers who are in charge of making public disclosures on behalf of the company; it is irrelevant to managers like Dr. Drakulic who are uninvolved in making disclosures or accounting.  *In re RAIT Fin. Trust Sec. Litig.*, No. 2:07-cv-03148-LDD, 2008 WL 5378164, at *12 (E.D. Pa. Dec. 22, 2008) ("knowledge of core activities of a business may be imputed to its ***highest officials*** in some circumstances"); *see also Zucco Partners,* 552 F.3d at 1000 ("facts critical to a business's core operations or an important transaction generally are so apparent that their knowledge may be attributed to the company and its ***key officers***").

Moreover, the core operations doctrine is not sufficient to raise an inference of scienter unless there are "particularized allegations showing that defendants had ample reason to know of the falsity of their statements." *RAIT*, 2008 WL 5378164, at \*12; *see also Zucco Partners,* 552 F.3d at 1000 (core operations allegations must be "combined with allegations regarding a management's role in the company that are particular and suggest that the defendant had actual access to the disputed information"). Here, plaintiffs have not pled any facts to show that Dr. Drakulic was even aware of the disputed public statements, much less knew of their alleged falsity.   The core business doctrine therefore cannot raise an inference of scienter as to Dr. Drakulic in this case, and certainly not the "strong" inference required by statute.

## IV.   DR. DRAKULIC DID NOT CONTROL SIGNALIFE'S ACCOUNTING OR DISCLOSURES, AND THEREFORE CANNOT BE LIABLE AS A CONTROL PERSON

Plaintiffs contend that even if Dr. Drakulic is not liable for a Section 10(b) violation, he should still be liable under Section 20(a) as a "control person."  (Opp. at 2-3.)  As an initial matter, a majority of courts have found that the pleading standard for Section 20(a) claims is Rule 8, which the Supreme Court has held to require all allegations be supported by "well-pleaded factual allegations" that "plausibly give rise to an entitlement to relief."  *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1950 (2009).   Under Rule 8, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id.* at 1949-50.

For their Section 20(a) claim against Dr. Drakulic, plaintiffs allege ***nothing*** more than mere conclusions.  As this Court noted in its Order on the other defendants' Motions to Dismiss, to state a claim for a Section 20(a) violation, plaintiffs must explain how the defendant in question "had the requisite power to directly or indirectly control or influence the specific

7

corporate policy which resulted in the primary liability." Order at 41 (citing *In re MicroStrategy, Inc. Sec. Litig.,* 115 F. Supp. 2d 620, 661 (E.D.Va. 2000)).  As noted above, the only specific allegations plaintiffs make regarding Dr. Drakulic's position at Signalife is that he was in charge of technology design; plaintiffs do not and cannot describe his specific duties as including any involvement the Company's public disclosures, financial reporting or accounting functions. (CAC ¶ 39.)  In conclusory allegations devoid of any specific factual support, plaintiffs try to lump Dr. Drakulic in with the other Defendants for whom the Court found the pleading sufficient.   (Opp. at 3; CAC ¶¶ 120-122.)   But plaintiffs' own allegations show only that Dr. Drakulic was a Technology Officer and was only involved in developing the heart-monitoring technology. (CAC ¶ 39.)  Plaintiffs' allegations of Section 20(a) liability are just "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and therefore must be dismissed as insufficient under Rule 8.  *Iqbal,* 129 S.Ct. at 1949; *see also Owens v. Gaffken & Barriger Fund,* LLC, No. 08 Civ. 8414(PKC), 2009 WL 3073338, at *15 (S.D.N.Y. Sept. 21, 2009) (dismissing Section 20(a) claims pled with insufficient, conclusory allegations); *Desai v. Gen. Growth Props., Inc*., --- F. Supp. 2d ---, 2009 WL 2971065, at *24 (N.D. Ill. Sept. 17, 2009) ("where a plaintiff self-servingly pleads a bare legal conclusion that the ... defendants were control persons, without alleging facts other than defendants' status to support their conclusion, a count for control person liability is improperly pleaded and must be dismissed").

Plaintiffs suggest that Dr. Drakulic's control over the technology design at Signalife alone was enough to give him control person liability, but it was the accuracy of the Company's *disclosures*—not the development of the heart-monitoring technology itself—that plaintiffs claim caused the alleged violations of  Section 10(b).  Thus, control over Signalife's *public*

*disclosure process* was "the specific corporate power" in this case that resulted in the alleged violation of Section 10(b), and plaintiffs have not pled any facts to indicate any way in which Dr. Drakulic had any control of, influence over, or even involvement in the disclosure process. (CAC ¶ 39.)

The holding in *Dutton v. D&K Healthcare Resources* is again instructive here: the *Dutton* court held that the head of a sales division in a company that had allegedly false disclosures regarding sales revenue could not be liable under Section 20(a) because as head of the sales division was not involved with "financial statements, accounting statements, or any information disseminated to the investing public." 2006 WL 1778876, at *8-11.  Dr. Drakulic is similarly not alleged to have had any involvement in Signalife's accounting or public disclosure drafting. (CAC ¶39.)  As a result, plaintiffs have failed to plead control person liability for Dr. Drakulic, and their claim should be dismissed. *Dutton*, 2006 WL 1778876, at *11.

## V.    CONCLUSION

For the foregoing reasons, Dr. Drakulic respectfully requests that the Court dismiss plaintiffs' claims against him.

Respectfully submitted,

s/Susan P. McWilliams
Susan P. McWilliams Fed. ID # 3351
smcwilliams@nexsenpruet.com
NEXSEN PRUET LLC
1230 Main Street, Suite 700 (29201)
Post Office Drawer 2426
Columbia, South Carolina 29202-2426
Tel:  803-253-8277
Fax:  803-727-1476

November 9, 2009

Columbia, South Carolina

9

Paul R. Bessette (admitted *pro hac vice*)
bessettep@gtlaw.com
Jesse Z. Weiss (admitted *pro hac vice*)
weissjz@gtlaw.com
Laura L. Moriaty (admitted *pro hac vice*)
moriatyl@gtlaw.com
GREENBERG TRAURIG LLP
300 West 6th Street, Suite 2050
Austin, TX  78701
Tel:  512.320.7200
Fax:  512.320.7210

Counsel for Defendant Budimir Drakulic