IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| ROBERT A. LATHAM, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>MITCHELL J. STEIN, BILL MATTHEWS, PAMELA M. BUNES, BUDIMIR S. DRAKULIC, ROBERT C. SCHERNE, KEVIN F. PICKARD, LOWELL T. HARMISON, MARVIN H. FINK and SIGNALIFE, INC.,<br><br>    Defendants. | Case No. 6:08-cv-02995-RBH |
| DARRYL K. ROTH, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>MITCHELL J. STEIN, WILLIAM R. MATTHEWS, PAMELA M. BUNES, BUDIMIR S. DRAKULIC, ROBERT C. SCHERNE, KEVIN F. PICKARD, LOWELL T. HARMISON, MARVIN H. FINK and SIGNALIFE, INC.<br><br>    Defendants. | Case No. 08-cv-3183-RBH |

**LEAD PLAINTIFFS' MOTION FOR RECONSIDERATION**

Lead Plaintiffs Bryan D. Harris, Mark Taylor and Greg Taylor, collectively, the Taylor Signalife Investor Group ("Plaintiffs"), respectfully move this Court for reconsideration of its September 4, 2009 Order (the "Order"), denying in part and granting in part Defendants' joint and separate motions to dismiss.[1]  Specifically, this Court's Order provided that Plaintiffs could

---

[1] As the Order noted, Defendants Signalife, Inc. ("Signalife" or the "Company"), Kevin F. Pickard, Robert C. Scherne and William R. Matthews filed a Motion to Dismiss, CA. No. 6:08-cv-2995 ("Latham

seek reconsideration of the Court's dismissal of certain claims, which were dismissed based on statute of limitations grounds, once the United States Supreme Court issued its opinion in *Merck & Co., Inc. v. Reynolds*, 130 S.Ct. 1784 (2010).

On April 27, 2010, the Supreme Court issued its opinion in *Merck*. This Court lifted the previously imposed stay on May 11, 2010. Accordingly, based on the reasoning and analysis set forth in *Merck*, Plaintiffs respectfully move this Court to reconsider its prior order dismissing, as barred by the statute of limitations, Plaintiffs' claims concerning the lack of commercial viability of the Fidelity 100 and the claims regarding Mitchell J. Stein's ("Stein") control over the Company. Plaintiffs submit that the Supreme Court's decision and analysis in *Merck* supports a finding that Plaintiffs' claims as to the Fidelity 100 and Stein are timely. Thus, this Court should reconsider its Order and deny Defendants' motions to dismiss such claims.

**INTRODUCTION**

In its Order, the Court dismissed Plaintiffs' §10(b) Securities Exchange Act claims regarding Stein's control over Signalife and the commercial viability of the Company's flagship product, the Fidelity 100, as time-barred barred under the applicable two-year statute of limitations contained in the Sarbanes-Oxley Act of 2002, codified at 28 U.S.C. § 1658(b). Under §1658(b), a complaint asserting §10(b) claims "may be brought not later than . . . 2 years after the discovery of the facts constituting the violation."

Under its prior analysis, the Court determined that Plaintiffs' claims concerning the viability of the Fidelity 100 and Stein's control were time-barred because "the facts constituting the violation" of these claims were known to Plaintiffs two years before the first complaints

---

Case"), Doc. #52; CA. No. 6:08-cv-3182 ("Roth Case"), Doc. #45 & 52). Defendant Pamela M. Bunes ("Bunes") filed her Motion to Dismiss separately, joining Signalife's Motion, and setting forth separate grounds for dismissal. (Latham Case, Doc. #53; Roth Case, Doc. #44 & #53) Lowell T. Harmison's ("Harmison") Motion to Dismiss was also filed separately and joined Signalife's Motion. (Latham Case, Doc. #44). Defendants Budimir Drakulic ("Drakulic") and Stein were not parties to the Motions to Dismiss because Drakulic had not yet moved for dismissal and the action as to Stein was stayed pursuant to his filing of bankruptcy in the United States Bankruptcy Court for the Southern District of Florida. (*See* Order, Roth Case, Doc. #73, at 1 n.1).

against Signalife were filed in August and September 2008. (*See* Roth Case, Doc. #73, at 8-18). This Court, adopting the Fourth Circuit's standard for analyzing when the statute of limitations commences, held that the claims were time-barred because Plaintiffs were placed on "***inquiry notice***" at least two years before the initial filing date by two lawsuits filed against Signalife in 2004 and March 2006, both of which contained allegations Plaintiffs now rely upon for these two claims. *See id*. at 9-10, 17-18.[2]

Although the two claims were dismissed as time-barred under the "inquiry notice" standard, this Court, recognizing the "lack of consensus among the circuits as to when the statute of limitations in a securities fraud action accrues," stayed the action pending the United States Supreme Court's decision on the issue in *Merck & Co., Inc. v. Reynolds*, 129 S.Ct. 2432 (2009). (*See* Roth Case, Doc. #73, at 10 n.9, 42-43). Indeed, the Order invited the parties to petition this Court to reconsider the dismissal of the two allegations held as time-barred "based upon any change of law made by the *Merck* decision." *Id*. at 42-43.

Ultimately, the Supreme Court's *Merck* decision changed the law this Court relied on in dismissing Plaintiffs' claims. The Supreme Court's *Merck* opinion resolved the statute of limitations issue in Plaintiffs' favor. Specifically, in its unanimous, 9-0 decision, the Supreme Court explicitly overruled Fourth Circuit precedent by stating, "***we reject 'inquiry notice' as the standard***" for determining when the statute of limitations period for §10(b) claims is triggered. *Merck,* 130 S.Ct. at 1798. Instead, the Supreme Court held that under the §1658(b) "discovery rule," even if the plaintiff had "inquiry notice" the "limitations period does not begin to run until the plaintiff thereafter ***discovers*** or a reasonably diligent plaintiff ***would have discovered 'the facts constituting the violation,' including scienter*** – irrespective of whether the actual plaintiff undertook a reasonably diligent investigation." 130 S. Ct. at 1798. Furthermore, the Supreme Court held that in the §10(b) context, the statute of limitations would not commence until a plaintiff's "'discovery' of scienter-related facts beyond the facts that show a statement (or

---

[2]     Unless otherwise noted, all emphasis is added and citations are omitted.

3

omission) to be materially false or misleading." *Id*. at 1797. The Supreme Court recognized that it would "frustrate the very purpose of the 'discovery rule'… if the limitations period began to run regardless of whether a plaintiff had discovered any facts suggesting scienter," under the "special heightened pleading requirements" found in the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *Id.* at 1796.

Previously, Defendants did not seek dismissal claiming that Plaintiffs had actually discovered, or would have discovered, the facts constituting a §10(b) violation (including the facts supporting scienter) with respect to the two dismissed claims. As Plaintiffs previously argued in opposing Defendants' motions to dismiss, Plaintiffs could not have discovered the facts regarding falsity of these statements and the specificity to establish scienter until certain facts and information were disclosed at the end of the Class Period, when the truth was revealed and the intent of the Defendants was uncovered.

Indeed, Plaintiffs could not have discovered the facts necessary to constitute the 10(b) violation, including the scienter-related facts, concerning the viability of the Fidelity 100 because those facts were tied to Defendants' Class Period representations. The facts that such statements were false and the facts that Defendants acted with scienter did not begin to come to light until after Signalife's April 14, 2008 webcast, which first alerted Plaintiffs and the public that Signalife had defrauded investors as it failed to recognize any revenue or make any sales because the Fidelity 100 was not viable. Moreover, Defendant Harmison's admission that no sales existed was not disclosed until after the April 14, 2008 webcast. Also, the facts concerning Stein's control over the Company and his stock manipulation scheme, and the facts concerning Defendants' intent to deceive investors about Stein's control were not revealed until after the end of the Class Period when Confidential Witnesses ("CWs") detailed the scheme behind Signalife.

Defendants are unable to show how Plaintiffs could have discovered all the facts constituting a §10(b) violation with regards to these two claims before the April 14, 2008 webcast. Accordingly, the Court should reconsider the Order and revive Plaintiffs' claims.

4

**SUMMARY OF ALLEGATIONS**[3]

Plaintiffs' Complaint asserts claims under the Securities Exchange Act of 1934 on behalf of purchasers of publicly traded securities of Signalife who purchased such securities during the Class Period, from February 10, 2004 to April 14, 2008. (¶1)[4] This case concerns the alleged use and manipulation of Signalife as a vehicle to engage in a stock manipulation scheme, perpetrated by Defendants. The Company was in the business of manufacturing and developing a "revolutionary" heart monitor (called the "Model 100 Heart Monitor" or the "Fidelity 100") based on proprietary technology that made its product clearly superior to any other product available in the marketplace. Plaintiffs' Complaint alleges that, during the Class Period, Defendants made numerous false and misleading statements concerning the commercial viability of the Fidelity 100, and concealed Stein's role in controlling the Company's operations.

From the start of the Class Period, Defendants repeatedly touted Signalife's technology to the public and stated that the Fidelity 100 was "market-ready" and thus commercially viable. (¶¶45, 48, 52) In fact, on March 26, 2006, Signalife continued its false and misleading statements concerning the Fidelity 100 when it announced the imminent "roll out" of the Fidelity 100 heart monitor and the execution of an exclusive sales and marketing agreement with Rubbermaid Medical Solutions ("Rubbermaid"). (¶¶ 8, 55, 57, 59) By January 2007, however, Rubbermaid concluded that the Fidelity 100 was nowhere close to being commercial ready to take to market and the Company terminated its contract with Signalife. (¶¶64-65) On January 24, 2007, Rubbermaid filed a breach of contract action against Signalife alleging that the Fidelity

---

[3] In an effort to avoid complete duplication, Plaintiffs will not repeat, but incorporate by reference, the summary of allegation sections in both their opposition to Defendants Signalife's Motion to Dismiss ("Latham Case, Doc. #66; Roth Case, Doc. #64), and their opposition to Defendants Bunes and Harmison's Motions to Dismiss. (Latham Case, Doc. #65; Roth Case, Doc. #63)

[4] All ¶ and ¶¶ references are to Plaintiffs' Consolidated Class Action Complaint filed December 10, 2008 (amended on February 24, 2009 to add Defendants Stein and Drakulic to the caption).

5

100 was not commercially ready for sale and that none of the Fidelity sales Signalife reported in October 2006 had actually occurred. (¶¶9, 58, 61-66) The documents later released in connection with Rubbermaid's lawsuit against Signalife evidence that Defendants Bunes and Harmison were aware of the Company's false and misleading statements at the time they were made because contemporaneously created documents show Rubbermaid was complaining that the Fidelity 100 was not commercially viable and that the Holter Monitor was not fully designed or ready to be put into the commercial market. (*See, e.g.,* Latham Case, Doc. #65, #66; Roth Case, Doc. #63, 64 Guglielmo Decl., Exs. 6, 9, 13, 14, 18, 22).

During the Class Period, the Company was never able to successfully manufacture or sell commercially the Fidelity 100 (its flagship product) or any of the other products based on the Fidelity 100's technology. Despite this fact, in the weeks and months leading up to the close of the Class Period, Defendants continued to make a number of false and misleading statements concerning sales of the Fidelity 100 and the tens of millions of dollars of revenue being recognized by the Company. (¶¶11, 68, 73, 75-76, 81-82) Defendants further stated that the demand for the Fidelity 100 and the related products was so strong that the Company would have to further ramp up production to keep up with the ever-increasing demand. (¶79)

However, despite all the false positive statements concerning the sales, revenues and demand for its products, the truth was finally revealed when the Company failed to provide any concrete details of the purported sales and revenue to the public in an April 14, 2008 webcast. (¶¶85-86) The Company's stock, which reached a high of $8.20, plummeted to approximately $.75 at the end of the Class Period. The Company was subsequently delisted by American Stock Exchange ("AMEX") and its stock is essentially worthless. (¶87)

Post-Class Period revelations confirm that Defendants knew that Signalife never had any products to sell, did not make any sales that produced any revenue and was little more than a stock manipulation scheme, perpetrated by Stein, including by and through a succession of Signalife executive officers. (¶¶18, 43, 88-89)  For instance, after the Class Period, CW #1, asserted that "[n]othing happens at Signalife without Stein's okay," and revealed that Stein was manipulating the Company stock price and "shorting" the stock. (¶¶19, 22, 42)  In addition, CW#2 revealed that Stein was manipulating the Company's stock price, by using shares transferred to "blind trusts" by ARC Finance, and that Harmison admitted that millions of dollars in sales orders reported by Signalife in press releases and SEC filings did not exist. (¶¶4, 18, 19, 22, 43, 88)

**ARGUMENT**

**I.     Plaintiffs' Claims Are Not Time-Barred Under *Merck***

    **A.     Plaintiffs' Claims Should Be Restored Because *Merck* Rejects the Fourth Circuit's "Inquiry Notice" Standard Followed by This Court**

In their motions to dismiss filed before *Merck* was issued, Defendants argued that two lawsuits, *Recom Managed Systems, Inc. v. Sparks,* No. SC-038642 (Ventura Co. Superior Court) and *Fink v. Signalife, Inc.,* No. BC349925 (L.A. Co. Superior Court), placed Plaintiffs on "inquiry notice" regarding Stein's control over Signalife. (Latham Case, Doc. #52, Roth Case, Docs. #45 & #52, at 10-13; Latham Case, Doc. #53, Roth Case, Doc. #44 & #53, at 8; Latham Case, Doc #44, at 1).  Defendants also cite to the *Sparks* case to argue that Plaintiffs were placed on "inquiry notice" concerning the commercial viability of the Fidelity 100. (Latham Case, Doc. #52, Roth Case, Doc. #45 & #52, at 13)  Because these cases were filed in 2004 and March 2006, respectively, Defendants argued that these claims are time-barred under the statute of limitations, under the Fourth Circuit's "inquiry notice" standard.  *Id*.

As set forth in 28 U.S.C. § 1658(b), a complaint alleging "fraud, deceit, manipulation, or contrivance" under the Securities Exchange Act "may be brought not later than the earlier of ... 2 years after the discovery of the facts constituting the violation; or ... 5 years after such violation." (*See* Roth Case, Doc. #73, at 8).  This Court stated in the Order that in the Fourth Circuit this statute of limitations will begin to run when the plaintiff is on inquiry notice.  *See id.* at 9-10 ("In the Fourth Circuit, the statute of limitations begins to run when the fraud is discovered or should have been discovered by the exercise of due diligence.") (citing *Brumbaugh v. Princeton Partners*, 985 F.2d 157, 162 (4th Cir. 1993)).  According to the Fourth Circuit, "[t]he objective standard of due diligence requires reasonable investigation of the possibility of misrepresentation once an individual has been placed on inquiry notice of wrongdoing."  *Brumbaugh*, 985 F.2d at 162.  Based on the prevailing Fourth Circuit opinions at the time, this Court found that Plaintiffs' claims were time-barred because the *Sparks* and *Fink* lawsuits placed Plaintiffs on "inquiry notice" two years before the initial complaints were filed.  (Roth Case, #73, at 17)

The *Merck* decision, however, rejects the Fourth Circuit's "inquiry notice" standard for determining when the statute of limitations begins to run.  In the Merck opinion, the Supreme Court declared, "we reject 'inquiry notice' as the standard."  *Merck,* 130 S.Ct. at 1798.  The Supreme Court found that "the 'discovery' of facts that put a plaintiff on 'inquiry notice' does not automatically begin the running of the limitations period."  *Id*.  Thus, the Supreme Court's holding rejects the Fourth Circuit's prior test to determine when the statute of limitations begins to run under §1658(b).

Specifically, the Supreme Court in rejecting the "inquiry notice" standard noted that "'discovery' as used in this statute encompasses not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff *would* have known."  *Id*. at 1796.  The Court

8

also reasoned that when a plaintiff is on "inquiry notice" that is not necessarily the point at which the plaintiff would have discovered facts "constituting the violation." *Id*. at 1797. The Court further pointed out that §1658(b) states that the claim accrues only "after discovery" of the facts, not before discovery. *Id*. Because "[n]othing in [§1658(b)] suggests that the limitations period can sometimes begin ***before*** 'discovery' can take place," the Supreme Court found that the "inquiry notice" standard cannot be reconciled with the statute. *Id*. (emphasis in original). Significantly, the *Merck* decision also rejected the notion that "inquiry notice" requires a plaintiff to undertake a reasonably diligent investigation, stating:

> We cannot accept this argument for essentially the same reason we reject "inquiry notice" as the standard generally: We cannot reconcile it with the statute, which simply provides that "discovery" is the event that triggers the 2-year limitations period – for all plaintiffs.

*Id*. at 1797-98.

Following the Supreme Court's *Merck* decision, the basis for this Court's Order dismissing these two claims is no longer valid. Therefore, this Court should reconsider its dismissal.

### B.   *Merck* Requires the "Discovery" of Scienter-Related Facts Before the Statute of Limitations Commences

Furthermore, the Supreme Court in *Merck* specifically held that the statute of limitations period for securities fraud actions could not commence until a plaintiff could discover "facts constituting the violation" which would necessarily include the fact of scienter, "a mental state embracing intent to deceive, manipulate, or defraud," facts supporting scienter. *Id.* at 1797.

Specifically, the Supreme Court rejected Merck's argument that §1658(b) does not require discovery of scienter-related facts. *Id*. at 1796-97. In doing so, the Supreme Court stated that "[s]cienter is a fact" constituting "an important and necessary element of §10(b) violation."

9

*Id*. at 1797.[5]  The Court recognized that a contrary rule would effectively reward defendants who successfully conceal their involvement in fraudulent conduct, because otherwise, as the Supreme Court stated:

> It would therefore frustrate the very purpose of the discovery rule in this provision – which, after all, specifically applies only in cases 'involv[ing] a claim of fraud, deceit, manipulation, or contrivance,' §1658(b) – if the limitations period began to run regardless of whether a plaintiff had discovered any facts suggesting scienter. So long as a defendant concealed for two years that he made a misstatement with an intent to deceive, the limitations period would expire before the plaintiff had actually 'discover[ed]' the fraud.

*Merck*, 130 S. Ct. at 1796.  Importantly, the Court also found that facts that tend to show a materially false or misleading statement (or omission) are not sufficient to show scienter as well. *Id*.  The Supreme Court reasoned that:

> Where §10(b) is at issue, however, the relation of factual falsity and state of mind is more context specific. An incorrect prediction about a firm's future earnings, by itself, does not automatically tell us whether the speaker deliberately lied or just made an innocent (and therefore nonactionable) error. Hence, the statute may require 'discovery' of scienter-related facts beyond the facts that show a statement (or omission) to be materially false or misleading.

*Id.* at 1797.  Indeed, because "Congress has enacted special heightened pleading requirements for the scienter element of § 10(b) fraud cases," *id.*, requiring the "discovery" of more scienter-related facts than those needed to show falsity is logical.

In sum, under the Supreme Court's *Merck* decision, the statute of limitations-period under §1658(b) "does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation,' including scienter-

---

[5]  To establish a 10(b) violation, a plaintiff must prove, among other things, that the defendant made a false statements or omission of material fact with scienter. *See Teachers' Ret. Sys. of La. v. Hunter*, 477 F.3d 162, 172 (4th Cir. 2007).  In the Order, this Court recognized that Plaintiffs' factual allegations constituting the §10(b) violation were required to meet a heightened pleading standard, which the PSLRA "significantly strengthens." (Roth Case, Doc. #73, at 18-19, 31)  Specifically, the PSLRA "requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.* the defendant's intention to decisive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); 15 U.S.C. 78u-4(b)(2) (a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind").

irrespective of whether the actual plaintiff undertook a reasonably diligent investigation." *Id*. at 1798.[6] In so holding, the Court emphasized that it would "frustrate the very purpose of the discovery rule" to allow the limitations period to run before a plaintiff could have discovered sufficient facts to adequately plead his or her claims. *Id.* at 1797. As set forth below, the Supreme Court's opinion in *Merck* provides that this Court's prior Order, dismissing certain of Plaintiffs' claims as time-barred, must be reconsidered and that Plaintiffs' claims are timely.

### C. Defendants Cannot Establish that Plaintiffs Discovered, or Would Have Discovered, the Facts Constituting the Violation from the *Sparks* and *Fink* Lawsuits

Consistent with well-established case law, the Supreme Court confirmed in *Merck* that it is a defendant's burden to establish on a motion to dismiss that a reasonably diligent plaintiff would in fact have discovered "the facts constituting [defendant's] violation." *Id*. at 1799. Here, Defendants have failed to meet that burden because they cannot establish that either the *Sparks* or *Fink* case would have caused Plaintiffs to discover the facts constituting a §10(b) violation, including the facts that show false statements were made and facts related to Defendants' scienter, concerning the viability of the Fidelity 100 and Stein's control two years before the initial complaints were filed.

#### 1. Defendants Cannot Establish that Plaintiffs Discovered, or Would Have Discovered, Facts Demonstrating the Falsity of the Class Period Statements

Plaintiffs' Complaint alleges that Defendants made several false and misleading statements (and omissions) regarding the viability of the Fidelity 100 and Stein's control,

---

[6] Recently, Southern District of New York Judge Jed Rakoff noted that in *Merck* the Supreme Court "held, in effect, that even if a plaintiff had 'inquiry notice' sufficient to warrant beginning to investigate, a plaintiff **would not be barred** by the statute of limitations unless a reasonably diligent plaintiff similarly situated would have actually discovered the facts showing the violations alleged in the plaintiff's complaint." *Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co. Inc.*, No. 08 Civ. 10841, 2010 WL 2175875, at *2 (S.D.N.Y. June 1, 2010).

11

beginning as early as February 14, 2004. (¶¶19, 21, 45, 48, 52) In this case, the facts constituting the element of falsity for a §10(b) violation are directly based upon Defendants' representations about the viability of the Fidelity 100 and the omissions surrounding Stein's role in the Company. That such statements and omissions were false and misleading did not come to light until after the April 14, 2008 webcast.

Indeed, after the webcast, Plaintiffs and the public became aware that the Fidelity 100 had failed to generate any of the purported revenue Defendants had touted throughout the Class Period because the product was not commercially viable. Plaintiffs, therefore, would have been unable to discover that Defendants' statements concerning the viability of the Fidelity 100 were false until the webcast. Furthermore, the facts concerning Stein's true role at the Company were revealed and confirmed after the April 2008 webcast by two confidential witnesses. (¶¶4, 18, 19, 22, 42, 43, 88) Thus, Plaintiffs' claims are timely under *Merck*.

### 2. Defendants Cannot Establish that Plaintiffs Discovered, or Would Have Discovered, Scienter-Related Facts

In addition, Defendants cannot demonstrate that Plaintiffs would have discovered sufficient scienter-related facts two years before the initial complaints were filed. Similar to the facts concerning falsity, the facts related to scienter in this case could not have been discovered until after the April 14, 2008 webcast.

*Merck* is directly on point and again favors Plaintiffs on this issue. In *Merck*, the company argued that plaintiff discovered, or would have discovered, facts related to scienter from pleadings filed in previously filed products-liability complaints. *Id*. at 1799. These product-liability complaints did not contain any specific information suggesting the fraud alleged in the securities case against Merck, *i.e.*, that Merck knew statements were false even as they were being made. *Id.* "And, without providing any reason to believe that the plaintiffs had

12

special access to information about Merck's state of mind, the complaints alleged only in general terms that Merck had concealed information about [the drug] and 'purposefully downplayed and/or understated' the risks associated with [the drug]." *Id.* The Supreme Court found that neither of these two circumstances reveals "facts" indicating scienter. *Id.* The Court held that the plaintiffs did not discover, and Merck has not shown that a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation.'" *Id.*

Similarly, neither the *Sparks* nor the *Fink* lawsuits, which involved disputes concerning employment contracts, contained any specific information suggesting the allegations Plaintiffs have made in this case. In particular, neither case contains information that Defendants knew that the statements and omissions concerning the viability of the Fidelity 100 or Stein's control were false. Furthermore, the pleadings in *Sparks* and *Fink* only alleged that the Fidelity 100 may not be commercially viable and Stein controlled the Company in general terms, without addressing the Defendants' state of mind.

The facts of this case indicate that Plaintiffs could not have discovered scienter-related facts to adequately plead their claims until the truth about the Company's revenue, sales and control were revealed at the April 14, 2008 webcast, and thereafter. Indeed, Defendant Harmison did not admit that the orders and sales were non-existent until after the webcast, and the Company's results showing no sales were not disclosed until after that time. (¶¶85-89)

Because Defendants were able to conceal that false and misleading statements were made with the intent to deceive, Plaintiffs could not have known the scienter-related facts necessary to file a §10(b) complaint that would satisfy the heightened PSLRA standard. Therefore, the claims related to the commercial viability of the Fidelity 100 and Stein's control of the Company are not time-barred and should be allowed to proceed.

13

**CONCLUSION**

The Supreme Court's *Merck* decision was favorable to Plaintiffs' claims concerning the commercial viability of the Fidelity 100 and Stein's control over Signalife. In no uncertain terms, *Merck* rejected the "inquiry notice" standard this Court relied upon in dismissing these claims. Furthermore, Defendants have failed to, and for that matter cannot, demonstrate that Plaintiffs actually discovered, or would have discovered, the facts constituting a 10(b) violation, including scienter-related facts, two years before the initial complaints were filed, as required by *Merck*. Accordingly, Plaintiffs respectfully request that this Court reconsider the Order and deny Defendants' motions to dismiss as to these two claims.

Dated: June 8, 2010                             Respectfully submitted,

  /s/ Terry E. Richardson, Jr.
Terry E. Richardson, Jr. (#3457)
RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC
1730 Jackson Street
Barnwell, SC 29812
Tel: (803) 341-7850
Fax: (803) 541-9625
trichardson@rpwb.com

*Liaison Counsel for Plaintiffs*

Beth Kaswan (admitted *pro hac vice*)
Joseph P. Guglielmo (admitted *pro hac vice*)
SCOTT+SCOTT LLP
500 Fifth Avenue, 40th Floor
New York, NY 10110
Tele: (212) 223-6444
Fax: (212) 223-6334
bkaswan@scott-scott.com
jguglielmo@scott-scott.com

David R. Scott (admitted *pro hac vice*)
SCOTT+SCOTT LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Tel: (860) 537-5537
Fax: (860) 537-4432
drscott@scott-scott.com

        Arthur L. Shingler III (admitted *pro hac vice*)
        Luis E. Lorenzana (admitted *pro hac vice*)
        SCOTT+SCOTT LLP
        600 B Street, Suite 1500
        San Diego, California 92101
        Tel.: (619) 233-4565
        Fax: (619) 233-0508
        ashingler@scott-scott.com
        llorenzana@scott-scott.com

        *Lead Counsel for Plaintiffs*

CERTIFICATE OF SERVICE

     I hereby certify that on June 8, 2010 I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

     I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on June 8, 2010.

     Respectfully submitted,
     /s/ Terry E. Richardson, Jr.
     Terry E. Richardson, Jr. (#3457)
     RICHARDSON PATRICK
     WESTBROOK & BRICKMAN LLC
     1730 Jackson Street
     Barnwell, SC 29812
     Tel: (803) 341-7850
     Fax: (803) 541-9625
     trichardson@rpwb.com